## No. 9518.

### GORDON ET AL. *v.* DENVER ALFALFA MILLING & PRODUCTS COMPANY.

1. CONTRACT—*Construed.*   Adamson agreed to deliver and defendant to buy "all hay grading No. 2 or better grown or growing" upon certain described lands. Adamson was the owner of the hay and it was in stacks upon the lands mentioned. *Held* that no title passed until the hay was graded and accepted by defendant. A subsequent mortgagee of Adamson has the better right. The mortgagee having assumed possession contracted to sell it and defendant to buy it, at a specified price per ton. Defendant was liable for the price so agreed upon notwithstanding his prior contract with Adamson.

2. PLEADINGS—*Construed.*   The answer alleging that defendant "at all times has been willing to pay plaintiff the contract price specified in its contract with Adamson." *Held* an admission that plaintiff had title under the mortgage.

*Error to Prowers District Court, Hon. A. Watson McHendrie, Judge.*

*Department One.*

Mr. M. G. SAUNDERS and Mr. E. F. CHAMBERS, for plaintiffs in error.

Mr. GRANBY HILLYER and Mr. D. B. KINKAID, for defend-
ant in error.

Mr. Justice Teller delivered the opinion of the court.

PLAINTIFFS in error brought suit against the defendant
in error to recover what they alleged to be the purchase
price of a quantity of alfalfa. They claimed to have had
title to the hay from the taking of possession thereof, under
and in accordance with the terms of a chattel mortgage
upon it, and with the\ consent of the mortgagor.

They allege in the complaint, that, after having thus
taken possession of the hay, their agent was authorized
to sell it to the highest bidder for cash; that the defendant
company's bid was accepted, and the hay delivered to it.

The defendant presented an affirmative defense to the
effect that it had "entered into a certain contract with one
Earl Adamson for the purchase of certain hay, then and
there owned by the said Adamson, in stack upon, etc.,
under the terms of which contract defendant agreed to
buy, and Adamson agreed to deliver, all hay grading No.
2 or better, grown or growing upon the above described
land for the season of 1916," then stating the prices, etc.

The answer further alleges that the plaintiffs took the
chattel mortgage in question with full knowledge of the
existence of the said contract. There were some further
matters alleged, which are not necessary to consider. On
a trial to the court, defendant had judgment.

From the record it appears that, in December, 1916, the
plaintiffs, to whom Adamson was largely indebted, secured
from him a chattel mortgage upon the hay in question;
that it appearing that horses were consuming the hay,
and that the defendant was hauling some of it away, plain-
tiffs, by direction of the mortgagor, took possession of the
hay through an agent, one Sundin. Sundin, by direction
of the plaintiffs, applied to the defendant and other alfalfa
buyers for bids on the hay. The defendant bid $13 a ton,
which bid was accepted, and it received the hay. It offered
to pay for the hay at the price named in its contract with
Adamson.

The contention of the defendant is that its bid was conditional, that is, it was to pay the price named, on condition that the plaintiffs' agent had a right to sell. It is now contended that the sale was not effective, because the mortgage was inoperative, being, as counsel claim, upon property already sold to the defendant. And second, because if the mortgage were in fact valid, no right had been acquired by plaintiffs under their attempted foreclosure.

The first objection assumes that the contract proved was a sale passing title to the defendant. This assumption is wholly groundless. There is nothing in the language of the contract to justify that conclusion. It is executory and unilateral. No title would pass under that contract until the hay had been graded and accepted by the company. It was not required to take any specific quantity of hay, and no one could tell prior to delivery and acceptance what hay would be treated by the defendant as within the contract. The contract was wholly lacking in words of present sale. Adamson, therefore, was in law, if not in morals, at liberty to dispose of the hay as he saw fit. He is not a party to this suit and the rights of the defendant as to him, if he failed to keep his contract, are not involved.

As to the second objection, it is sufficient to say that the record shows no claim in the trial court that the mortgage, if valid, had not been foreclosed.

The general manager of the defendant company testified that he tried to pay the plaintiffs as mortgagees of the hay. True, he offered to pay only the amount which would be due under the contract with Adamson. The answer alleges that the defendant has been at all times willing to pay the plaintiffs the contract price of said hay as specified in the contract with Adamson. This is an admission that the plaintiffs had title to the hay under the mortgage. The supposed condition, i. e., that the seller had title, was no condition other than that which the law implies on every sale made by a party acting in his own right. The defendant having failed in its affirmative defense, and it being undisputed that it bought the hay at the price claimed by the plaintiffs,

and the plaintiffs having title thereto, it cannot now avoid its obligation.

For these reasons, the judgment is reversed and cause remanded for further proceedings in harmony with the views herein expressed.

*Reversed.*

Chief Justice Garrigues and Mr. Justice Burke concur.